# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DARSHAN GREWAL,

Petitioner,

v.

KATHY MENDOZA-POWERS,

Respondent.

_______________________________________/

1:06-CV-01825 OWW GSA HC

FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is represented in this action by Stephen M. Defilippis, Esq.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Los Angeles, following his conviction by jury trial on December 10, 1990, of one count of second degree murder in violation of Cal. Penal Code § 187, and two counts of driving under the influence and causing great bodily injury in violation of Cal. Vehicle Code § 23153(a) and Cal. Penal Code § 191.5(a). See Respondent's Answer to Petition (hereinafter "Answer"), Exhibit 1. Petitioner was sentenced to serve an indeterminate term of eighteen years to life in state prison with the possibility of parole.

Id.

On December 9, 2004, Petitioner's second parole suitability hearing was held before the California Board of Prison Terms (hereinafter "Board"). See Answer, Exhibit 2. Petitioner participated in the hearing and was represented by counsel. Id. At the conclusion of the hearing, the Board denied parole and deferred rehearing for two years. Id. at 85, 88.

Petitioner then sought relief in the state courts. Petitioner filed a petition for writ of habeas corpus on June 9, 2005, in the Los Angeles County Superior Court. See Answer, Exhibit 6. It was denied on July 26, 2005, in a reasoned opinion. Id. He then filed a habeas petition in the California Court of Appeal, Second Appellate District, on December 13, 2005. See Answer, Exhibit 7. The petition was denied without comment on March 24, 2006. Id. Petitioner then filed a petition for review in the California Supreme Court on April 4, 2006. See Answer, Exhibit 8. The petition was denied without comment on June 14, 2006. Id.

Petitioner filed the instant petition for writ of habeas corpus in the Sacramento Division of the Eastern District of California of the United States District Court on November 27, 2006. The petition was transferred to the Fresno Division and received in this Court on December 15, 2006. The petition challenges the 2004 decision of the Board denying parole. Petitioner contends the Board's decision finding Petitioner posed an unreasonable risk of danger to society is contrary to the evidence. He argues the state court decision upholding the Board's denial of parole was unreasonable.

On April 25, 2007, Respondent filed an answer to the petition. Petitioner filed a traverse on August 15, 2007.

## FACTUAL BACKGROUND[1]

On April 7, 1990, at approximately 8:15 p.m., Petitioner was traveling westbound on Highway 18, a two-lane road, near the eastern border of Los Angeles County. Petitioner pulled his vehicle into the eastbound lane to pass, despite a clear view of oncoming traffic. Adam Russell de Jesus was driving a pickup truck eastbound, headlights on. Seeing Petitioner's

[1]The factual background is derived from the summary of facts as set forth in the January 14, 1992, opinion of the California Court of Appeal, Second Appellate District. See Answer, Exhibit 3.

automobile enter his lane of traffic, he slowed and drove toward the shoulder, as did other drivers in both lanes. Petitioner, without braking, drove into the truck near the shoulder of the eastbound lane, killing de Jesus and seriously injuring his passenger, Shayna Roberson.

Based upon the fact Petitioner had a .22 percent blood alcohol content approximately three hours later, the People's expert opined that at the time of the collision it had been .28 percent. That figure would be consistent with the consumption of approximately 16 standard drinks in the preceding hour.

**DISCUSSION**

I. Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the

adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

Petitioner's claims were presented on June 9, 2005, in a petition for writ of habeas corpus to the Los Angeles County Superior Court. See Answer, Exhibit 6. On July 26, 2005, the superior court denied the claims in a reasoned opinion. Id. Petitioner then presented those claims to the appellate court and to the California Supreme Court. Both petitions were summarily denied. See Answer, Exhibits 7, 8. The California Supreme Court, by its "silent order" denying review of the superior court's decision, is presumed to have denied the claims presented for the same reasons stated in the opinion of the superior court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

II. Review of Petition

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 12 (1979) (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, an inmate is guaranteed the following process: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard,"

Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole." Id. Petitioner does not dispute that he received these procedural rights.

"In Superintendent, Mass. Correc. Inst. v. Hill, the Supreme Court held that 'revocation of *good time* does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by *some evidence* in the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass v. California Board of Prison Terms, 461 F.3d 1123, 1128 (9th Cir.2006) (emphasis added). The Ninth Circuit has held that this same standard also extends to parole determinations. Hayward v. Marshall, 512 F.3d 536, 542 (9th Cir.2008), *citing* Irons v. Carey, 505 F.3d 846, 851 (9th Cir.2007), *quoting* Hill, 472 U.S. at 457 ("We have held that 'the Supreme Court ha[s] clearly established that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record,' or is 'otherwise arbitrary.'"). In assessing "whether a state parole board's suitability determination was supported by 'some evidence' in a habeas case, our analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state." Hayward, 512 F.3d at 542, *quoting* Irons, 505 F.3d at 851. Here, the Court must look to California law and review the record. In reviewing the record and determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Sass, 461 F.3d at 1128.

California law provides that after an inmate has served the minimum term of confinement required by statute, the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for" the prisoner. Cal. Penal Code § 3041(b). "[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole. Cal. Code Regs. tit. 15, § 2402(a). The Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors it

has set forth in the California Code of Regulations.

To determine whether 'some evidence' supports the state court decision, the test is not whether some evidence supports the reasons cited for denying parole, "but whether some evidence indicates a parolee's release unreasonably endangers public safety." Hayward, 512 F.3d at 543, *quoting* In re Lee, 143 Cal.App.4th 1400, 1408 (Cal.Ct.App.2006).

In denying parole in this case, the Board provided several reasons for its decision: 1) The gravity of the commitment offense; 2) Escalating pattern of criminal conduct related to drinking and driving; 3) Unstable social history; and 4) Insufficient participation in self-help programs. See Answer, Exhibit 2 at 85-87. Petitioner disputes this and argues that there is no evidence supporting the finding that he currently poses an unreasonable risk of danger to society if released. Review of the Board's decision reveals that the state court decision approving the Board's determination of unsuitability was not unreasonable.

The primary factor in the Board's determination was the commitment offense itself. Pursuant to §§ 2402(c)(1)(A), (D), the Board determined that multiple victims were attacked and the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering. See Answer, Exhibit 2 at 85. In support of the finding that multiple victims were attacked, the Board noted that Petitioner killed the driver of another vehicle and seriously injured a passenger. Therefore, the state court reasonably upheld this finding. As to the factor that the offense demonstrated an exceptionally callous disregard for human suffering, the state court found no evidence that the victim suffered within the meaning of the regulation. Accordingly, the state court reasonably rejected this finding.

In addition to the commitment offense itself, the Board also determined that Petitioner had an escalating pattern of criminal behavior related to drinking and driving. As noted by the state court, under 15 C.C.R. § 2402(b), the Board is charged with considering "[a]ll relevant, reliable information available" in determining Petitioner's suitability for parole. In making this determination, the Board must consider, *inter alia*, Petitioner's "past criminal history, including involvement in other criminal misconduct which is reliably documented," "the base and other commitment offenses, including behavior before, during and after the crime," and "any

conditions of treatment or control." In addition, "[c]ircumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability." Id. The Board and the state court considered the fact that Petitioner had at least three drunk driving convictions prior to the commitment offense. As a result, he had been placed on probation, fined, and jailed, yet he failed to alter his pattern of criminal behavior. The Board determined he currently posed an unreasonable risk of danger in light of his past pattern of criminal conduct. Given Petitioner's record of drinking and driving, the state court's decision was not unreasonable.

The Board also found Petitioner had an unstable social history pursuant to § 2402(c)(3). The state court noted that Petitioner had told the Board he had been in an arranged marriage that failed. As a result, he began to drink. Three months after his divorce, he remarried his ex-wife. After ten months, they again divorced. Thus, there is some evidence supporting the Board's finding of an unstable social history. The state court's finding was not unreasonable.

Finally, the Board determined that Petitioner had failed to participate sufficiently in self-help programs. Id. at 86-88. As previously noted, the Board must consider "[a]ll relevant, reliable information available" in determining Petitioner's suitability for parole. 15 C.C.R. § 2402(b). The Board must consider Petitioner's "past and present attitude toward the crime" and his "past and present mental state." Id. The Board commented favorably on Petitioner's participation in self-help programs to date; however, it was determined that Petitioner needed additional time in order to demonstrate his ability to maintain his gains over an extended period of time. See Answer, Exhibit 2 at 87. Petitioner had only been participating since 1994. Given his extended history of drinking and driving, the Board determined the gains Petitioner had made to date, while positive, were recent. The Board's finding that Petitioner continues to pose an unreasonable risk of danger was reasonable and supported by the evidence.

The Board also considered the opposition of the Los Angeles County District Attorney's Office. The agency was strongly opposed to a grant of parole due to Petitioner's pattern of drinking and driving. Id. at 72-74. The statement in opposition was properly considered pursuant to Cal. Penal Code § 3042 and 15 C.C.R. § 2402(b).

The Board also considered various circumstances demonstrating suitability pursuant to § 2402(d). The two most recent psychological reports were supportive of release. Id. at 87. In addition, Petitioner was commended for his participation in self-help programs to date. Id. at 88. He had excellent work reports and had maintained a disciplinary-free record while in prison. Id. at 87-88. The Board also noted Petitioner had upgraded educationally and vocationally, and had good parole plans. Id. Nevertheless, the Board found these positive factors, while promising for a possible future grant of parole, did not outweigh its determination that Petitioner remained an unreasonable risk of danger to society if released. The nature of Petitioner's offense, the need for continued self-help programming, his pattern of criminal conduct prior to imprisonment, his unstable social history and the opposition of the district attorney were more indicative of a danger to the public if released. In light of these factors, the Board's determination that Petitioner continued to pose an unreasonable risk of danger to the public if released was understandable. This Court cannot conclude that the state court rejection of Petitioner's claim - that the Board's determination was not supported by some evidence - was unreasonable.

Petitioner also contends the Board has relied solely on the immutable circumstances of the underlying offense and his criminal history prior to incarceration. In Biggs v. Terhune, 334 F.3d 910, 916-17 (9th Cir.2003), the Ninth Circuit stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Although a denial of parole initially can be justified by relying on the gravity of the offense, over time, "should [the prisoner] continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of [his] offense and prior conduct would raise serious questions involving his liberty interest in parole." Irons v. Carey, 505 F.3d 846, 853 (9th Cir. 2007), *citing* Biggs, 334 F.3d at 916. Nevertheless, in both Irons and Biggs, the Ninth Circuit upheld the denials of parole based solely on the commitment offense. This was because in each of these cases the prisoner had not yet served the minimum term of his sentence. Here, at the time the Board denied parole, Petitioner had only served 15 years of his 18 years-to-life sentence. Therefore, the due process concerns noted in

Biggs are not at issue in this case. Moreover, as discussed above the offense itself was not the only reason for the Board's denial.

Petitioner's remaining challenges to the Board's decision are also unavailing. He asserts that the standard announced in In re Dannenberg, 34 Cal.4th 1061, 1095 (2005), is unconstitutionally vague. In Dannenberg, the California Supreme Court addressed its analysis in In re Rosenkrantz, 24 Cal.4th 616, 683 (2002), wherein the Court stated that, "in order to prevent the parole authority's case-by-case suitability determinations from swallowing the rule that parole should 'normally' be granted, an offense must be 'particularly egregious' to justify the denial of parole." The Court in Dannenberg clarified that the use of the phrase "'particularly egregious,' conveyed only that the violence or viciousness of the inmate's crime must be more than *minimally necessary to convict him* of the offense for which he is confined." 34 Cal.4th at 1095. Petitioner argues this altered standard is so amorphous as to be completely unreviewable. He claims that every murder could fit into the category of "more than minimally necessary to convict" and the application of this standard depends completely on the "subjective, personal opinion and whims of the Board members." See Memorandum in Support of Petition at 36.

Vagueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis. Maynard v. Cartwright, 486 U.S. 356, 361 (1988). Thus, the court does not address whether the prohibition is vague or overbroad in its other potential applications. United States v. Hogue, 752 F.2d 1503, 1504 (9th Cir.1985). A criminal sanction is not vague if it provides fair notice of the conduct proscribed. Id. A defendant is deemed to have fair notice of an offense if a reasonable person of ordinary intelligence would understand that his or her conduct is prohibited by the rule in question. Id.

Petitioner's void-for-vagueness argument is not persuasive. By focusing on this language alone, Petitioner ignores the statute itself. Petitioner's attack is taken out of context, because it ignores section Cal.Code Regs. tit. 15, § 2402(c) which sets forth the circumstances tending to show unsuitability. The Board cannot merely characterize a murder as "more than minimally necessary to convict him of the offense" to deny him parole. The Board must apply the factors set

forth in § 2402(c) to determine whether the timing and gravity of the current offense is such that consideration of public safety requires a more lengthy period of incarceration. The Board also uses these factors to determine whether the prisoner would pose an unreasonable risk of danger to society if released from prison. In Petitioner's case, multiple victims were attacked. Under the statute, this factor is one of the stated factors to be considered in determining whether Petitioner should be deemed suitable for parole.[2] Reading the Dannenberg standard in context with § 3041 and § 2402, the court finds that a reasonable person of ordinary intelligence would understand the standards for parole eligibility.

Petitioner also argues the Board's findings violate the principles set forth in Apprendi v. New Jersey, 530 U.S. 466 (2000), and Blakely v. Washington, 542 U.S. 296 (2004). In Apprendi, the Supreme Court found that, "[o]ther than a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Petitioner argues that the Board's use of factors not specifically found by a jury to determine the length of his sentence violates this principle. It does not. The maximum sentence for second degree murder in California, and in Petitioner's case, is "to life." Cal. Penal Code § 190(a). Because the parole board's decision does not increase the maximum penalty, Apprendi and Blakely do not apply.

Petitioner further argues that the balance of the positive factors tending to show suitability tip the scales against the negative factors cited by the Board. He claims the Board failed to give due regard for his demonstrations of exemplary behavior, evidence of rehabilitation and positive institutional behavior. The Court will not re-weigh the evidence in this case. See Hill, 472 U.S. at 455-56. The Court's review is limited to determining whether the "some evidence" standard is met. Id. As discussed above, it is apparent the Board considered all relevant evidence in this case and carefully balanced and assessed the various factors in determining Petitioner continued to pose an unreasonable risk to public safety. The state court decision finding some evidence supported the Board's decision was not unreasonable.

---

[2]Petitioner also takes issue with the factor, "the offense was carried out in a dispassionate and calculated manner." However, the state court determined this factor was inapplicable to Petitioner.

**RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The Petition for Writ of Habeas Corpus be DENIED; and

2. The Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the Objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the Objections. The Finding and Recommendation will then be submitted to the District Court for review of the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated: April 11, 2008**

/s/ **Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE